Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII-DJ 2024-062C

| | | |
|---|---|---|
| KEISHLA J. ZAYAS AVILÉS<br><br>*Recurrida*<br><br><br>v.<br><br><br>TRES BRAVO CORP.<br><br>*Recurrente* | KLRA202500298 | Revisión de Decisión Administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2024-0019549<br><br>Sobre: Ley Núm. 5 de 23 de abril de 1973 [Ley Orgánica de DACo] |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de octubre de 2025.

Comparece ante nos, Tres Bravo, Corp. (Tres Bravo o recurrente), mediante *Recurso de Revisión de Decisión Administrativa* y nos solicita la revisión de la *Resolución* emitida el 31 de marzo de 2025 por el Departamento de Asuntos del Consumidor (DACo)[1]. Mediante el referido dictamen, el DACo declaró *Ha Lugar* la reclamación presentada por la señora Keishla J. Zayas Avilés (señora Zayas Avilés o recurrida) y ordenó a Tres Bravo a pagarle a la recurrida la cantidad de siete mil setecientos noventa y tres dólares con cuarenta y dos centavos ($7,793.42).

Por los fundamentos que expondremos a continuación, **_confirmamos_** la determinación recurrida.

## I.

El caso de autos se originó el 17 de julio de 2024, ocasión en que la señora Zayas Avilés presentó una *Querella*[2] ante el DACo en

---

[1] Véase, Apéndice del *Recurso de Revisión de Resolución Administrativa*, págs. 1-8.
[2] *Íd.*, pág.24

contra de Tres Bravo Corp., Estación de Gasolina[3]. En esta, señaló que el 16 de abril de 2024, recargó el combustible de su Toyota Tacoma del año 2022, lo cual resultó en daños a su vehículo porque el combustible estaba mezclado con agua. Agregó que, un empleado de la gasolinera le confirmó que, en esos días, el tanque había sufrido una inundación y ruptura. Así las cosas, alegó que presentó evidencia del costo del arreglo, sin embargo, aseveró que nadie le contactó para solucionar su problema hasta pasado más de un mes desde el suceso. Dado lo anterior, adujo que tuvo que incurrir en la compra de un vehículo nuevo por haberse quedado sin transporte. Por ello, reclamó como remedio lo siguiente: "daños y perjuicios por los daños del vehículo y su negligencia de el pago del estimado y solicitando el pago de 3 años de mi vehículo anterior"[4].

El 12 de noviembre de 2024, Tres Bravo presentó su *Contestación a Querella*[5]. En esta, negó la totalidad de las alegaciones contenidas en la querella y levantó como defensa, entre otros, que la señora Zayas Avilés no tenía derecho al remedio solicitado y que el mismo era improcedente; que ésta nunca había comprado gasolina a la recurrente; y que no era cierto que un empleado de la recurrente hubiese confirmado que el combustible estaba mezclado con agua. Por lo cual, solicitó la desestimación de la querella.

Posteriormente, el 5 de diciembre de 2024, se notificó a las partes mediante correo electrónico sobre una *Citación a Vista Administrativa*. Según se desprende de los autos originales, se notificó a las siguientes direcciones: larubiazayas@hotmail.com; ricardo@castrovargaslaw.com[6].

---

[3] *Íd.*, págs. 20-28. Notificada a Tres Bravo el 12 de septiembre de 2024.
[4] *Íd.*, pág. 24.
[5] *Íd.*, págs. 31-33.
[6] Véase, Expediente Administrativo del DACo, SAN-2024-19549.

Así pues, la vista administrativa se celebró el 12 de febrero de 2025, conforme fue señalada y notificada. A esta compareció la señora Zayas Avilés, más no Tres Bravo[7]. Como parte de los procedimientos, la señora Zayas Avilés brindó su testimonio.

### Testimonio de la señora Zayas Avilés

La señora Zayas Avilés declaró que, el 16 de abril [de 2025] procedió a echar $62.00 de combustible en el puesto de gasolina Gulf ubicado en la carretera 152 de Naranjito, y que posterior a ello, su Toyota Tacoma 2022 comenzó a presentar fallas, dejándola a pie.[8] Narró que, contactó servicios de grúa y procedió a llevar su vehículo al *dealer* Toyota de Bayamón para que lo verificaran.[9] Arguyó que estos últimos le confirmaron que el combustible que había echado tenía agua.[10] Dado lo anterior, expresó que logró contactarse mediante WhatsApp con la gerente encargada de la tienda para explicarle la situación, y que esta le pidió la evidencia del recibo de gasolina, así como del estimado de los daños del vehículo.[11] Añadió que envió los documentos solicitados, sin embargo, no recibió comunicación alguna de parte las personas relacionadas al garaje.[12] Aseveró que, aproximadamente, luego de un mes y dos semanas y media, recibió una llamada de una empleada de nombre Ashley.[13] Indicó que esta le solicitó información sobre la ubicación del vehículo afectado, para entonces proceder a realizar el pago del estimado.[14] Ante ello, explicó que le contestó a la señora Ashley que el vehículo se encontraba en Autocentro, porque en la espera de establecer comunicación con alguien [del garaje] para realizar el arreglo del vehículo, tuvo que darlo en *trade in* para así adquirir un nuevo vehículo.[15] Esbozó que luego de un lapso de tiempo recibió otra llamada de la señora Ashley y esta le indició que su jefe dijo que sometiera el caso a DACo.[16] Por último, esgrimió que le envió una carta [a la parte querellada] reclamando no solo el estimado [de la reparación] del vehículo, sino también el dinero que había pagado en concepto de financiamiento durante esos tres (3) años[17].

---

[7] Véase, Transcripción de Regrabación de Vista Administrativa, pág 3, líneas 6-9.
[8] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 4, líneas 1-24.
[9] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 4, líneas 1-24; pág. 5, líneas 1-10.
[10] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 5, líneas 11-21.
[11] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 6, líneas 6-24; pág. 7, líneas 1-16.
[12] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 8, líneas 1-24; pág. 9, líneas 1-24; pág. 10, líneas 1-3.
[13] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 10, líneas 17-24.
[14] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 11, líneas 1-24.
[15] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 12, líneas 1-24; pág. 14, líneas 9-24.
[16] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 15, líneas 12-17.
[17] Véase, Transcripción de Regrabación de Vista Administrativa, pág. 16, líneas 7-24; pág. 17, líneas 1-24.

El 31 de marzo de 2025, el DACo emitió la *Resolución*[18] recurrida, en la cual realizó las siguientes determinaciones de hechos:

1. La parte querellante se identifica como Keishla J. Zayas Avilés, mayor de edad, con dirección postal: HC 01 BOX 4623, Barranquitas, PR 00794, y correo electrónico: larubiazayas@hotmail.com.
2. La parte querellada se identifica como Tres Bravo Corp., corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, debidamente inscrita en el Departamento de Estado, bajo el número de registro 492809, y con dirección postal: Calle Baldorioty 9, Coamo, PR 00769.
3. El 16 de abril de 2024, la parte querellante cargó combustible a su vehículo de motor [Toyota-Tacoma, del año 2022], en el puesto de gasolina de la parte querellada, que opera como Gulf, en Naranjito, Puerto Rico. La querellante recargó la cantidad de $62.00, de gasolina a su unidad.
4. Al salir del puesto de gasolina, la querellante notó que la unidad comenzó a tener un fallo, la unidad se apagó, dejó a pie a la querellante.
5. La parte querellante llevó su unidad en remolque vehicular el 16 de abril de 2024, a Toyota de Bayamón, donde inspeccionaron la unidad y le diagnosticaron que la gasolina estaba contaminada con agua, lo que ocasionó daños en el sistema de combustión.
6. La querellante se llevó su unidad a si residencia, ya que no tenía, en ese momento, la capacidad exigida por el taller, para la reparación de la unidad.
7. En el transcurso de menos de 7 días, desde el incidente, la querellante le reclamó a la parte querellada por el arreglo de la unidad.
8. El 9 de mayo de 2024, la parte querellante le solicitó a Toyota de Bayamón, un estimado de los arreglos de la unidad para entregárselo a la parte querellada. El estimado fue por la cantidad de $7,793.42[19].
9. La parte querellante reclamó en varias ocasiones a la parte querellada.
10. Aproximadamente para el mes de julio de 2024, la parte querellada se comunicó con la parte querellante para saber en qué taller estaba la unidad, para efectuar el pago. La querellante le indicó que no poseía la unidad, ya que no pudo pagar la cantidad del estimado para las reparaciones, por lo cual tuvo que entregar la unidad dañada en *trade-in*, y adquirir un auto nuevo, por lo que la querellante solicitó que le pagaran a ella la cantidad del estimado entregado por Toyota de Bayamón.
11. La parte querellada no realizó el pago a la querellante por la cantidad indicada en el estimado.
12. Ante dicha situación, la parte querellante presentó la querella de epígrafe, solicitando el pago del estimado y el pago de 3 años pagados por ella por el financiamiento de la unidad dañada, por la gasolina contaminada[20].

Establecido lo anterior, el DACo determinó lo siguiente:

[L]a parte querellante solicitó que la parte querellada le reembolsara la cantidad por ella pagada en concepto de

---

[18] Apéndice del *Recurso de Revisión de Resolución Administrativa*, págs. 1-8.
[19] *Exhibit I – Estimado de Toyota de Bayamón*.
[20] Apéndice del *Recurso de Revisión de Resolución Administrativa*, págs. 2-3.

financiamiento, de la unidad Toyota-Tacoma, unidad que sufrió los daños. La querellante no le probó al Departamento qué cantidad, si alguna, fue la cantidad pagada por ella, en concepto de las mensualidades del financiamiento. La parte querellante se limitó a testificar que había pagado cierta cantidad, sin prueba alguna. No le proveyó la prueba suficiente al Departamento de los alegados pagos. [...] En este caso, recaía sobre la parte querellante, esta parte no le demostró al Departamento prueba sobre los alegados pagos realizados. A este Departamento no se le probó, ni se presentó prueba convincente sobre algún pago hecho del financiamiento de la unidad que sufrió los daños, que ameritara otorgarle cantidad alguna. Determina este Departamento que la parte querellante no es acreedora de su solicitud, en cuanto a que la parte querellada le reembolse los pagos efectuados por ella, en concepto de financiamiento, de la unidad Toyota-Tacoma[21].

En otras palabras, el DACo entendió que la señora Zayas Avilés no cumplió con presentar evidencia relacionada a los pagos efectuados por sí, en concepto de financiamiento, de modo que no procedía la reclamación en cuanto a ello. No obstante, lo anterior, declaró *Ha Lugar* la reclamación presentada por la señora Zayas Avilés y ordenó a Tres Bravo a pagar a la recurrida la suma de siete mil setecientos noventa y tres dólares con cuarenta y dos centavos $7,793.42.

En desacuerdo, el 3 de abril de 2025, la recurrida presentó una *Solicitud de Reconsideración,* en la cual solicitó que se le permitiera entregar evidencia de los pagos del financiamiento[22].

De igual forma, el 17 de abril de 2025, Tres Bravo presentó una *Moción de Reconsideración*[23]. En esta, el abogado de dicha parte informó no haber comparecido a la vista administrativa dado que recibió la información de la citación al correo chatarra o "junk mail/spam". Apuntaló, además, que la resolución dictaminada era una errada como cuestión de derecho, puesto que: (1) no se autenticó el estimado por la persona que lo preparó, y por ende, era prueba de referencia inadmisible; (2) el estimado no estaba firmado por persona alguna; (3) no se presentó prueba pericial para probar

---

[21] *Íd.,* pág. 5.
[22] *Íd.,* pág. 34.
[23] *Íd.,* págs. 10-15.

que la unidad sufrió daños, ni que la gasolina despachada fuera la causa del daño; (4) al la parte querellante dar en *trade in* el vehículo, no tenía derecho a ser compensada por los daños. En consecuencia, suplicó que se dejara sin efecto la resolución recurrida y que se señalara una nueva vista administrativa, de modo que la parte recurrente pudiese participar activamente en la misma y así defenderse de la reclamación.

Evaluada la *Solicitud de Reconsideración* sometida por la parte recurrida, el 7 de abril de 2025, el DACo la declaró *No Ha* Lugar[24].

Igualmente, el 25 de abril de 2025, el DACo declaró *No Ha Lugar* la *Moción de Reconsideración* presentada por la parte recurrente[25].

Inconforme, el 27 de mayo de 2025, Tres Bravo incoó el *Recurso de Revisión de Decisión Administrativa* que nos ocupa y señaló la comisión de los siguientes errores:

> **PRIMER ERROR**: Erró el Departamento de Asuntos del Consumidor al admitir el documento alegadamente realizado por el Concesionario Toyota de Bayamón, aun cuando el mismo era inadmisible, por falta de autenticación y por ser prueba de referencia.

> **SEGUNDO ERROR**: Erró el Departamento de Asuntos del Consumidor en la apreciación de la prueba al acoger el testimonio de la querellante y adjudicarle credibilidad, inclusive en asuntos de naturaleza científica y/o pericial.

> **TERCER ERROR**: Erró el Departamento de Asuntos del Consumidor al determinar que la querellante debía ser compensada por la cantidad de $7,793.42 cuando claramente no tenía derecho a ello.

> **CUARTO ERROR**: Erró el Departamento de Asuntos del Consumidor al determinar entrar a celebrar vista en su fondo sin contar con la comparecencia de la parte querellada.

> **QUINTO ERROR**: Erró el Departamento de Asuntos del Consumidor como cuestión de hecho y de derecho declarar sin lugar la moción de reconsideración.

El 3 de junio de 2025, emitimos una *Resolución* a los fines de autorizar la transcripción de la vista oral en el caso de epígrafe y, a

---

[24] *Íd.*, págs. 35-38.
[25] *Íd.*, págs. 16-19.

su vez, establecimos los términos para que las partes presentaran sus respectivos alegatos, entre otros.

El 11 de septiembre de 2025, emitimos *Resolución* en la que concedimos a la parte recurrida un término final e improrrogable hasta el 17 de septiembre de 2025 para someter su alegato en oposición. No obstante, al examinar detenidamente el expediente, nos percatamos que dicha parte no había sido notificada a su correo electrónico, según provisto por la recurrente. Consecuentemente, emitimos otra *Resolución* a los fines de que la Secretaria del Tribunal de Apelaciones notificara a la recurrida a su correo electrónico sobre un nuevo plazo para presentar su alegato. Transcurrido el término sin recibir postura alguna, damos por perfeccionado el recurso y procedemos a resolver sin el beneficio de su comparecencia.

## II.

### -A-

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[26]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[27]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[28].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son

---

[26] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).

[27] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

[28] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[29]. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[30]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[31]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[32].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[33]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[34]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[35].

---

[29] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[30] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

[31] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro, supra*, pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

[32] *Trigo Margarida v. Junta Directores, supra*, págs. 393-394; *Mundo Ríos v. CEE et al.*, 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[33] *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

[34] *Super Asphalt v. AFI y otro, supra*; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra*, pág. 394.

[35] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[36].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[37]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[38].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[39]. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[40].

---

[36] *OEG v. Martínez Giraud, supra*, pág. 90; *Super Asphalt v. AFI y otro, supra*, pág. 819, citando a *Torres Rivera v. Policía de PR, supra*, pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[37] *González Segarra et al. v. CFSE, supra*, pág. 277; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011).

[38] *González Segarra et al. v. CFSE, supra*; *Pereira Suárez v. Jta. Dir Cond., supra*, pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).

[39] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales, supra*.

[40] *González Segarra et al. v. CFSE, supra*, págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra*, pág. 217, citando a *Rebollo v. Yiyi Motors, supra*.

**-B-**

Los tribunales apelativos han de conceder gran deferencia a las decisiones de los organismos administrativos"[41]. Las determinaciones agenciales gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración"[42].

Por tal razón, los foros judiciales limitan su facultad revisora a los siguientes aspectos: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas[43].

Ahora bien, la deferencia a las determinaciones agenciales no es absoluta. No podemos imprimir un sello de corrección a las determinaciones o interpretaciones administrativas irrazonables, ilegales o contrarias a derecho[44]. Por tanto, la deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos;(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales[45].

A tenor con lo anterior, "la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables"[46]. En esa dirección, la evidencia sustancial es aquella

---

[41] *Oficina del Comisionado de Seguros de Puerto Rico v. Point Guard Insurance Company, Inc.*, 205 DPR 1005, 1026 (2020*); Asoc. FCIAS. v. Caribe Specialty II*, 179 DPR 923 (2010).
[42] *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 88 (2022); *Capó Cruz v. Junta Planificación et al.*, 204 DPR 581, 591 (2020).
[43] *Capó Cruz v. Jta. de Planificación et al., supra.*
[44] *Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico*, 206 DPR 803, 819 (2021).
[45] *Capote Rivera v. Voili Voila Corporation*, 2024 TSPR 29, 213 DPR __; *Super Asphalt Pavement, Corp. v. AFI y otro, supra.*
[46] *Oficina de Ética Gubernamental v. Martínez Giraud, supra*, pág. 89.

prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"[47].

Por otro lado, "cuando de conclusiones de derecho se trata, los tribunales tenemos una amplia facultad de revisarlas completa y absolutamente"[48]. A esos fines, la Sección 4.5 de la Ley de Procedimiento Administrativo, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos". Lo anterior "no equivale a la sustitución automática del criterio e interpretación del organismo administrativo"[49]. La determinación de una agencia merece deferencia sustancial aun cuando su interpretación no sea la única razonable[50]. Solo se sustituye "el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa[51].

**-C-**

El Departamento de Asuntos del Consumidor (DACo) fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *"Ley Orgánica del Departamento de Asuntos del Consumidor"*[52]. Este se creó con el propósito primordial de velar y establecer los derechos del consumidor y proteger los intereses de los compradores[53]. Asimismo, entre los poderes conferidos al Secretario de esa agencia están el atender, investigar y resolver las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía[54]. De igual forma, se faculta al Secretario a poner en vigor e implementar los derechos de los consumidores, tal y como están

---

[47] *Capó Cruz v. Jta. de Planificación et al., supra.*

[48] *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg.* P.R., 144 DPR 425, 436 (1997).

[49] *Capó Cruz v. Junta de Planificación, supra,* pág. 591; *Rolón Martínez v. Caldero López,* 201 DPR 26, 36 (2018).

[50] *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1003 (2011). Véase, también, *De Jesús v. Depto. Servicios Sociales,* 123 DP. 407, 418 (1942).

[51] *Capote Rivera v. Voili Voila Corporation, supra; Capó Cruz v. Jta. de Planificación et al, supra,* pág. 591.

[52] 3 LPRA sec. 341, *et seq.*

[53] 3 LPRA sec. 341(b).

[54] 3 LPRA sec. 341e(c).

contenidos en todas las leyes vigentes, mediante una estructura de adjudicaciones. Esta disposición nos permite aplicar los principios y disposiciones del Código Civil y otras leyes que gobiernen de forma concreta los hechos de cada caso.

Con la intención de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación, el 13 de junio de 2011 se aprobó el Reglamento Núm. 8034 de Procedimientos Adjudicativos del DACo[55]. Estas reglas aplicarán a las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores, o por el Departamento[56]. Cónsono con lo anterior, la Regla 27.1 del Reglamento Núm. 8034, *supra*, dispone que, "[t]oda resolución otorgará el remedio que en derecho proceda aun cuando la parte querellante no lo haya solicitado".

### III.

En el caso de autos, Tres Bravo nos señala, en síntesis, que erró el DACo al: (1) admitir el documento realizado por el Concesionario Toyota de Bayamón, aun cuando era inadmisible por ser prueba de referencia; (2) al acoger el testimonio de la querellante y adjudicarle credibilidad, incluso en asuntos de naturaleza científica y/o pericial; (3) al conceder la compensación de $7,793.42; (4) al celebrar vista sin la comparecencia de la parte querellada; (5) al declarar sin lugar la moción de reconsideración.

Como cuestión de umbral, debemos revisar si: (1) el remedio concedido por el DACo fue apropiado; (2) la decisión del DACo está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas.

---

[55] Regla 1 del Reglamento Núm. 8034.
[56] Regla 3 del Reglamento Núm. 8034.

Tras evaluar sosegadamente el recurso ante nuestra consideración, así como la prueba que obra en el expediente y la transcripción, determinamos que el DACo actuó correctamente. La *Resolución* recurrida es cónsona al derecho vigente y el DACo concede entera credibilidad al testimonio de la señora Zayas Avilés. Por estar estrechamente relacionados los errores primero, segundo. tercero y quinto, pasamos a resolverlos de manera conjunta. Veamos.

Primeramente, reiteramos que, las determinaciones efectuadas por las agencias administrativas son correctas en derecho. Al aplicar en el caso de autos el estándar de revisión, somos del criterio que el DACo otorga a la recurrida una partida de siete mil setecientos noventa y tres dólares con cuarenta y dos centavos ($7,793.42) por concepto de daños, al quedar esta sin su vehículo de motor cuando Tres Bravo le vende gasolina contaminada y, en consecuencia, provoca que el sistema de combustión sufriera daños.

Según pormenorizado precedentemente, nos sostenemos en que no estamos en la misma posición que el foro primario en cuanto a la oportunidad que tuvo de apreciar la prueba presentada y, por ello, su determinación nos merece plena deferencia. Consecuentemente, no vamos a alterar las determinaciones de hecho ni de derecho de la agencia recurrida al estar ampliamente fundamentada en la prueba documental y testifical. A tenor con lo anterior, nos abstenemos de alterar las determinaciones de hecho y la apreciación de la prueba del DACo. Por tanto, concluimos que, los errores primero segundo, tercero y quinto no fueron cometidos.

Referente al cuarto error, adviértase que el DACo, oportunamente, notificó a Tres Bravo de la ocurrencia de la vista administrativa. La justificación del recurrente para no comparecer a la vista no nos persuade, por lo cual, no encontramos criterios jurídicos para acoger dicho señalamiento de error.

Consideramos que, a base de la totalidad de la prueba desfilada, procede confirmar la determinación emitida por el DACo.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, ***confirmamos*** la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones